EBENEZER R. ESTES
*vs.*
ATLANTIC & ST. LAWRENCE RAILROAD COMPANY.

*Railroad fences.   R. S. of* 1857, *c.* 51, § 23, *and laws of* 1864, *c.* 231, § 4.
*Negligence; a question for the jury.*

A gate in a fence, which the defendants are bound to erect and maintain in good repair, is to be regarded as a part of the same.

It is for the jury to determine whether or not the defendants were guilty of negligence in the matter of keeping their fences in repair.

After a gate, part of such fence, had fallen, through its unsafe and defective hanging, the plaintiff had shut up his cattle in his barn-yard, for greater security, from which they escaped upon the defendants' track and were killed; whether or not he was guilty of negligence, is to be submitted to the jury.

ON EXCEPTIONS.

All the facts necessary to an understanding of the questions determined by the court are stated in the opinion.

*David Hammons*, for the plaintiff.

*J. & E. M. Rand*, for the defendants.

APPLETON, C. J. This is an action on the case, in which the plaintiff seeks to recover damages of the defendants for killing his cattle, which escaped from his premises upon their track, in consequence of a defect in their side fence.

The plaintiff offered evidence tending to show that there was a fence which the defendants were bound to maintain; that a gate was erected by them as a part of the fence; that it was insecurely hung; that as a servant of the plaintiff was passing through it the gate fell, in consequence of its defective fastening; that he was unable to replace it in position; that the servants of the defendants were near by, and knew when it fell, but did not replace it; that the plaintiff that evening shut up his cattle in his barn yard for their security; that they broke out during the night; strayed upon the defendants' track through the gateway, (the gate remaining down) and were there killed by the defendants' locomotive. Upon this evidence, the presiding justice ordered a nonsuit.

It was a duty imposed upon the defendants by statute to make, maintain, and keep in good repair, legal and sufficient fences on each side of land taken for their railroad, where it passes through enclosed or improved land, or wood lots belonging to a farm. R. S., 1857, c. 51, § 23. If, being under obligation to make and maintain a fence, they erected a gate in the line of the fence,

whether for their own convenience or that of others, it was their duty to fasten it securely, and to maintain it in good repair. If the gate fell, it should have been replaced without unreasonable delay. The safety of the public imperatively required the continued maintenance of legal and sufficient fences, with or without a gate, to protect the track from animals straying thereon. The gate, when erected, formed a part of the fence. There is no special mechanical or architectural skill required in its construction, and its maintenance in good repair is as essential as that of the fence of which it constitutes a portion.

The evidence tended to show that no suitable and safe gate had been constructed and properly hung; that the defendants had been guilty of neglect before, and were guilty of neglect at the time the plaintiff's cattle were killed, in not having a gate safely hung, and that the fall of the gate was the result of negligence in its erection. A gate that would tumble down, when used for the purpose for which it was built, could hardly be deemed such an one as would constitute any part of a "legal and sufficient fence." Whether the fall of the gate was imputable to the negligence of the plaintiff or his servant, or to that of the defendant, was a matter for the consideration of the jury, and it should have been submitted to their determination.

It is well settled that where the plaintiff is guilty of negligence, which directly and immediately contributes to the injury of his cattle, he cannot recover of a railway company unless, by the exercise of ordinary care and prudence at the time, the company might have avoided inflicting the injury.

The plaintiff offered evidence that the fall of the gate was the result of the defendants' negligence in its erection; that his servant was unable to replace it; that the defendants' servants were near by and might have replaced it; and that for the greater security of his cattle, he shut them up in his barn-yard. The question of contributory negligence on his part was one to be determined by the jury.

There was evidence introduced on the part of the plaintiff tend-

ing to show that he was in the exercise of ordinary and common care for the preservation of his cattle, and that the damages done were caused by the negligence of the defendants. The question at issue should have been submitted to the jury. The non-suit was improperly ordered. *Exceptions sustained.*

WALTON, DICKERSON, BARROWS and VIRGIN, JJ., concurred.
DANFORTH, J., did not concur.